NARUT v. WILLIAMS.

1. APPEAL AND ERROR—CHANCERY APPEALS HEARD DE NOVO.
    The Supreme Court hears chancery appeals *de novo* upon pleadings and issues framed in the circuit court.

2. VENDOR AND PURCHASER—DEFAULT—NOTICE OF FORFEITURE OF LAND CONTRACT—WAIVER.
    Termination of land contract for sale of premises, occupied by lessee for gasoline filling station purposes, by notice of forfeiture was proper where payments required of vendee were greatly in default; nor was forefeiture waived by subsequent receipt of certain impounded funds in hands of trust company which had been engaged to collect rents and manage the property where it had received the funds previous to notice of forfeiture as payment to and for the vendors and it was insufficient to meet the default.

3. SAME—ABANDONMENT—ESTOPPEL—LACHES.
    Vendees under land contract who abandoned it for a number of years and then sought to have forfeiture set aside *held*, estopped by laches, especially where they used their money in buying other property instead of saving rights under land contract here involved.

4. SAME—FORFEITURE OF LAND CONTRACT—QUIETING TITLE—EQUITY.
    Surviving vendor under land contract *held*, entitled to have removal of cloud occasioned by plaintiff vendees' claim that forfeiture of land contract was waived by defendant where plaintiffs had invoked equitable jurisdiction of the court.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 9, 1940. (Docket No. 61, Calendar No. 41,044.) Decided June 3, 1940. Rehearing denied September 6, 1940.

Bill by Stanley Narut and wife against Edna M. Williams for specific performance of a land contract, an accounting or leave to redeem, and other relief. Cross bill by defendant against plaintiffs to remove cloud from title to land. Bill dismissed and decree

for defendant on cross bill. Plaintiffs appeal. Affirmed.

*Irving B. Ackerman (William V. Capler, of counsel)*, for plaintiffs.

*Charles Bowles,* for defendant.

WIEST, J. By bill in equity plaintiffs seek specific performance of a land contract and an accounting or, in the alternative, leave to redeem from forfeiture. The land contract was executed August 20, 1930, grew out of a course of dealings between the parties, and contained a provision for forfeiture in case of default in performance by plaintiffs. Plaintiffs made default and, in September, 1935, they were sent a notice of intention to forfeit the contract and the next month they were served with the notice of forfeiture. Plaintiffs did nothing. In December, 1938, plaintiffs filed the bill herein. Upon hearing in the circuit court the bill was dismissed, and defendant Edna M. Williams, the surviving vendor, under cross bill, was adjudged owner of the property and the land contract cloud was removed.

Plaintiffs review by appeal, claiming waiver of the forfeiture of the land contract and, without any such issue framed or presented in the circuit court and without waiver of issues raised and adjudicated there and without any change in the pleadings, now ask this court to hold the land contract in the nature of a mortgage requiring foreclosure in a court of equity and, therefore, the forfeiture accomplished nothing.

While this court hears chancery appeals *de novo*, it does so upon pleadings and issues framed in the circuit court. In the instant case the record and proofs show a land contract relation between the par-

ties with rights and remedies thereunder and not otherwise.

Proofs were taken by a circuit court commissioner under reference and from his unquestioned findings we state the following facts: On January 31, 1923, John C. McDonald sold, on land contract, the lands in question to Charles J. Andrews for $8,400, on terms, $840 down, and balance in monthly payments of $75 or more. On June 9, 1925, Andrews assigned his vendee's interest to plaintiffs. Plaintiffs desired to have a gasoline filling station constructed on the premises and, to accomplish that end, in August, 1930, assigned their vendees' interest to Ora E. Williams and Edna M. Williams, jointly. At that time there was due on that land contract the sum of $3,-060.88, and Mr. and Mrs. Williams assumed that obligation and agreed to build the gasoline filling station on the premises and then resell to plaintiffs on land contract for $19,000, allowing plaintiffs a credit of $7,000, their equity in the land, as a down payment on the contract, the balance to be paid in stated monthly amounts. Mr. and Mrs. Williams paid the balance due the vendors on such assigned land contract and received a joint deed. Thereafter they erected a gasoline filling station and placed a mortgage on the premises in the amount of $7,500.

The land contract in suit was executed August 20, 1930, and permitted the vendors to incumber the land by mortgage. The vendors paid up the land contract assigned to them, took a deed to the premises in their joint names, erected a gasoline filling station, and mortgaged the premises to the amount of $7,500.

The land contract provided:

"That the purchaser shall have possession of said lands from and after October 1, 1930, or before, while he shall not be in default on his part in carrying out the terms hereof and if purchaser shall fail to per-

form this contract or any part thereof the seller immediately after such default shall have the right to declare the same void and retain whatever may have been paid hereon and all improvements that may have been made upon the premises and consider and treat the purchaser as his tenant holding over without permission, and may take immediate possession of the premises and the purchaser and each and every other occupant remove and put out.''

Plaintiffs, as vendees, leased the premises for a term of 10 years to the Pennsylvania Petroleum Company. Thereupon the parties hereto, by agreement, assigned their interests in the land contract to the Equitable Trust Company of Detroit in order to have that company collect the rents, manage the property and apply the rentals on the contract. Shortly thereafter the lease to the Pennsylvania Petroleum Company was cancelled and, on November 1, 1931, the Stikeman Oil Company went into possession of the premises and made rental payments to the Equitable Trust Company.

Prior to the so-called banking holiday in February, 1933, the trust company had collected $668.52 as such rent but before making application thereof on the contract the bank closed and the funds were impounded. In 1934, the vendors commenced suit in the Wayne circuit to foreclose the land contract and this led to an agreement between the parties under which that suit was discontinued and the agreement with the Equitable Trust Company to manage and collect the rents was cancelled and thereafter the vendors had the right to collect the rents and income. In October, 1934, the Stikeman Oil Company entered into a written lease of the premises for five years, at stated monthly rental, and was then in arrears for past rent in the amount of $618.50 and, by mutual agreement of all the parties, the Stike-

man Oil Company gave several notes totalling that amount to the vendors. In July, 1935, plaintiffs were notified that unless they placed the contract in good standing the vendors would give notice of intention to forfeit. Plaintiffs made no effort to put the contract in good standing. On September 26, 1935, the vendors served vendees with a notice of intention to forfeit the contract unless amounts past due were paid on or before October 10, 1935. No payments were made and, October 14, 1935, the vendors served notice of forfeiture on plaintiffs.

"At the time of the service of the notice of forfeiture, plaintiffs were in default under said contract $2,112.13, which included $685.28 in unpaid taxes, and is exclusive of the balance of $100 still unpaid on the rent notes, as well as impounded cash of $668.52. * * *

"On November 12, 1935, the vendors (Williams and wife) received the final payment of $100 on the rent notes totalling $618.50, dated October 1, 1934, given by the tenant for rental due on the premises prior to September 1, 1934.

"On July 16, 1936, part of the funds impounded in the closed bank, namely $241.09, was paid by the Equitable Trust Company to the vendor, Ora E. Williams. No credit on account was given the vendees for these sums.

"Thereafter, on November 15, 1938, the balance of said impounded cash, arising from rental collections, amounting to $427.43, was paid by the Equitable Trust Company to the attorney for the surviving vendor, Edna M. Williams. This sum was not credited to the vendees upon the contract, but was taken and used by the vendor as moneys to which she was entitled. * * *

"There is due and owing from the vendees to the vendor under the terms of said land contract, $4,-482.96, as of December 1, 1938 (delinquent principal interest and taxes, $2,923.61, and balance of principal, $1,559.35), plus interest, as called for by the terms

of the contract, less any rentals received by the vendor from the premises from said date, December 1, 1938.''

Under the mentioned circumstances the land contract could be and was terminated by the notice of forfeiture and there was no waiver of the forfeiture by subsequent receipt of the bank-impounded money, for such money, in point of fact and law, was paid to and for the vendors before notice of forfeiture and did not meet the default.

Under the evidence plaintiffs abandoned the land contract, are estopped by laches, and it would be inequitable now to overlook their longtime default and previous indifference thereto, such as using their money in buying other property instead of trying to save their rights under the contract. See *Nelson* v. *Hacker,* 278 Mich. 383; *Dundas* v. *Foster,* 281 Mich. 117.

Plaintiffs having invoked the equitable jurisdiction of the court, and defendant Edna M. Williams, as survivor of herself and husband, and now owner of the premises, by cross bill having asked removal of the cloud occasioned by plaintiffs' claim, the court was right in granting such relief.

The decree is affirmed, with costs to defendant.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, NORTH, MCALLISTER, and BUTZEL, JJ., concurred.